[803 NE2d 375, 771 NYS2d 54]

N.Y.A.A.D., INC., Doing Business as AUTOMOTIVE RECYCLERS' AS-SOCIATION OF NEW YORK, et al., Appellants, v STATE OF NEW YORK et al., Respondents.

Argued November 18, 2003; decided December 18, 2003

### POINTS OF COUNSEL

*DeGraff, Foy, Kunz & Devine, LLP,* Albany (*George J. Szary, Robert E. Biggerstaff, Douglas R. Kemp* and *Lori A. Sievers* of counsel), for appellants. I. The Appellate Division's decision should be reversed because chapter 161 of the Laws of 1996 contained a proviso such that failure to implement regulations as required by the proviso rendered chapter 161 void. (*Matter of Livingston,* 14 AD2d 264; *Matter of Second Ave. M.E. Church,* 66 NY 395; *Farmers' Bank of Fayetteville v Hale,* 59 NY 53.) II. The Appellate Division's decision should be reversed because the Commissioner impermissibly usurped legislative authority. (*New York State Assn. of Nurse Anesthetists v Novello,* 189 Misc 2d 564; *State Div. of Human Rights [Valdemarsen] v Genesee Hosp.,* 50 NY2d 113; *Boreali v Axelrod,* 71 NY2d 1; *Matter of Health Ins. Assn. of Am. v Corcoran,* 154 AD2d 61, 76 NY2d 995.)

*Eliot Spitzer, Attorney General,* Albany (*Julie S. Mereson, Caitlin J. Halligan* and *Daniel Smirlock* of counsel), for respondents. I. Rather than invalidating the Airbag Safety and Anti-theft Act, the Commissioner's failure to approve organizations to certify the safety of salvaged airbags comports with the Legislature's intent in enacting the statute. (*Matter of Ellis Ctr. for Long Term Care v DeBuono,* 261 AD2d 791, 93 NY2d 1037; *Bingham v New York City Tr. Auth.,* 99 NY2d 355.) II. The effectiveness of the Airbag Safety and Anti-theft Act is not in any event conditioned upon the Commissioner's adoption of regulations. (*Matter of Campagna v Shaffer,* 73 NY2d 237.)

### OPINION OF THE COURT

G.B. SMITH, J.

Appellants (collectively NYAAD), vehicle dismantlers and recyclers engaged in the sale of salvaged airbags, commenced this declaratory judgment action against the State and the Commissioner of Motor Vehicles challenging the validity of the Airbag Safety and Anti-theft Act and the Commissioner's action—or, more precisely, inaction—with respect to the Act. The issue before this Court is whether the Act, which imposes new requirements on the sale of salvaged airbags, is a nullity because

the Commissioner has failed to promulgate regulations necessary to implement the Act. We modify the order of the Appellate Division to declare the Act valid and otherwise affirm.

I.

In 1996, the State Legislature passed the Airbag Safety and Anti-theft Act (L 1996, ch 161), adding subdivisions (6) and (7) to Vehicle and Traffic Law § 398-d. The new subdivisions provided that an airbag (inflatable restraint system) "activated in a crash or stolen" should be replaced only by a newly manufactured restraint system or a salvaged airbag "certified according to standards established by a nationally recognized testing, engineering and research body as provided for in subdivision two of section four hundred fifteen-c of this chapter" (Vehicle and Traffic Law § 398-d [6] [b], [e], as added by L 1996, ch 161, § 5). The new section 415-c (2) of the Vehicle and Traffic Law stated that, effective March 1, 1998, "prior to offering any salvaged inflatable restraint system for sale such . . . system shall be certified according to standards established by a nationally recognized testing, engineering and research body approved by the commissioner [of Motor Vehicles] in consultation with the superintendent of insurance."

Section 11 of the 1996 Act states:

"This act shall take effect immediately, provided, that subdivision 7 of section 398-d of the vehicle and traffic law . . . shall take effect January 1, 1997, provided, further, the commissioner of motor vehicles shall promulgate such rules and regulations as are necessary to implement the provisions of this act on or before January 1, 1997."

At the time the Act was passed, no "standards established by a nationally recognized testing, engineering and research body" existed. Although the Legislature eventually extended the implementing deadline to March 1999, still no such standards were created. The Legislature did not extend the deadline further.

In December 1999, the Commissioner notified "All Repair Shops," that "effective March 6, 2000, only NEW airbags [would] be allowed to be installed where the original had been deployed" (capitalization in original). The Commissioner explained that, because section 415-c (2) of the Vehicle and Traffic Law allowed only for installation of "certified salvage

airbags" and no certification procedure was yet in place, the "only acceptable replacement bag at this time is a new one."

Thereafter, NYAAD continued to engage in the sale of salvaged airbags, but commenced this declaratory judgment action challenging the Commissioner's interpretation of the Act and the validity of his directive. NYAAD alleged that the Commissioner had a duty to promulgate regulations concerning certification standards for salvaged airbags and his failure to promulgate such regulations was an unsatisfied condition precedent, rendering the Act a nullity. In March 2000, NYAAD moved to preliminarily enjoin enforcement of the Commissioner's directive. Defendants cross-moved to dismiss on standing grounds. Supreme Court granted NYAAD's motion and denied defendants' cross motion.

In March 2001, defendants moved for summary judgment. In support of their motion, defendants presented evidence that (1) the first two drafts of the Act did not contain a provision allowing the use of salvaged airbags, but the final version did only after lobbying pressure from automobile dismantlers and recyclers; (2) in order to gain the exclusive ability to sell salvaged airbags, the dismantlers agreed to find a certifying procedure for salvaged airbags; and (3) the Act's original sponsor, Assembly Member Audrey Hochberg, stated that, if no approved system for certifying safety of salvaged airbags was found, the statute would only allow for the use of new airbags and the Act did not require the Commissioner to promulgate certifying standards. NYAAD cross-moved for summary judgment, offering evidence demonstrating the safety of salvaged airbags.

Supreme Court denied defendants' motion, granted NYAAD's cross motion and declared the Act a nullity. Reiterating its prior holding that "the Legislature intended to allow New York consumers access to salvaged airbags," the court held the Commissioner's failure to promulgate regulations was "fatal" to the Act "as it was a condition precedent" to its validity. The court reasoned that "Section 11 of Chapter 161 of the laws of 1996 was indeed a proviso as maintained by [NYAAD]. The effect of a proviso which is not satisfied is to restrain the enacting clause of the legislation." Defendants appealed.

The Appellate Division reversed on the law, denied plaintiffs' cross motion for summary judgment, granted defendants' motion for summary judgment and dismissed the complaint. The Court noted that the Act's plain language expressed the

Legislature's intent that either new or salvaged airbags certified by a nationally recognized testing body be installed as replacement systems, fulfilling the Act's "primary purpose of discouraging airbag theft and repair shop fraud." (298 AD2d 741, 742 [2002].)

The Court held that Supreme Court improperly

"construed the effective date clause to also require 'the promulgation of rules or regulations to implement the certification standards described in section 8.' The effective date clause, however, includes no such provision, requiring only that the Commissioner 'promulgate such rules and regulations as are necessary to implement the provisions of this [A]ct.' Since the requirement inferred by Supreme Court was not 'expressed clearly and unequivocally,' we conclude that the Act's effective date clause should not be read to make such regulations a condition precedent, thereby eviscerating the statute's intent" (id. at 743 [citations omitted]).

This Court granted leave to appeal.

On this appeal NYAAD continues to argue that the legislative intent behind the Act was to provide access to salvaged airbags to New York State consumers, and that the Commissioner's failure to establish a certifying body voids the Act. We disagree.

II.

To evaluate the impact of the Commissioner's failure to promulgate regulations pertaining to the use of salvaged airbags on the validity of the Act, we must ascertain and give effect to the intention of the Legislature, as evidenced both by the language of the statute and its legislative history (see Riley v County of Broome, 95 NY2d 455, 463 [2000]).

Apparent from the language of the statute is the intent to permit the sale of salvaged airbags only if enumerated conditions are met. If the conditions are not met, only new airbags are permitted. The statute expressly provides, for example, that "in no case shall any inflatable restraint system be replaced with anything other than a newly manufactured inflatable restraint system or a salvaged inflatable restraint system certified according to standards established by a nationally recognized testing, engineering and research body" (Vehicle and Traffic Law § 398-d [6] [e], as added by L 1996, ch 161, § 5).

The legislative history additionally manifests that intent. As stated in a memorandum in support of the legislation, for example, the Act "sets up criteria for replacement of airbag systems, first with newly manufactured replacements, but also with salvaged replacement systems which conform to requirements set forth in the bill . . . It further provides that, after March 1, 1998, only salvage[d] systems which have been certified as safe and appropriate for reinstallation may be sold according to the requirements set forth in the bill" (Senate Mem in Support of L 1996, ch 161, 1996 McKinney's Session Laws of NY, at 2141). Similarly, when the effective date of the Act was postponed, "[t]he intent was to ensure the safety of the public when airbags which were previously installed in another car were used to replace stolen or deployed airbags. Presently, the auto manufacturers and other industry groups do not recommend the use of any airbags, other than new airbags, for replacement" (Senate Mem in Support of L 1998, ch 78, 1998 McKinney's Session Laws of NY, at 1560).

Finally, the record contains later statements from individuals involved in the passage of the legislation that further confirm this conclusion.

As Assembly Member Hochberg testified at her deposition in this action, her interest in airbags resulted from a rash of thefts of airbags from automobile dealerships in the area she represented. In recounting the rest of the legislation, she stated that the original draft of the bill required that only newly manufactured airbags be used as replacements, and that after the bill passed all Assembly and Senate committees—but before it was submitted to a final vote—Assembly Member Bragman complained that the bill did not allow for the sale of salvaged airbags. Thereafter, Hochberg consulted with lobbyists from the dismantling industry and Nationwide Insurance, who suggested that salvaged airbags be sold subject to certification of their safety and verification that they were not stolen, and she modified the bill accordingly. Hochberg's modified bill gave the dismantling industry a monopoly on the sale of salvaged airbags. In return, the industry was to create a certification process and identify nationally recognized bodies that could establish standards; if the Commissioner of Motor Vehicles was unable to approve an agency or the certification process, only newly manufactured airbags could be sold.

John Frederick, who worked with Assembly Member Hochberg in drafting chapter 161, in an affidavit described the legisla-

tion as retaining the ban on salvaged airbags except under certain conditions. In Frederick's view, the effectiveness of the law was not meant to be contingent on the promulgation of regulations. Ernest Kitchen, the Director of Consumer Protection and Auto Business Regulation at the Department of Motor Vehicles, in his affidavit explained that he oversees the Department's administrative functions regarding the sale and installation of salvaged airbags and was involved in the negotiations resulting in the enactment of chapter 161. According to Kitchen, the compromise permitted unregulated sales of salvaged airbags until January 1, 1997, on and after which salvaged airbags could be used only after they were checked against an anti-theft index. On and after March 1, 1998, salvaged airbags could be sold only if certified for safety by a nationally recognized testing, engineering and research body approved by the Commissioner in consultation with the Superintendent of Insurance.

To further illustrate the intent of the Legislature, Hochberg considered a second bill once the first bill encountered difficulties. The second bill repealed the safety and anti-theft certification process and replaced it with the requirement that salvaged airbags conform to original equipment manufacturers' standards. Although Hochberg initially agreed to sponsor this bill, she had a change of heart after further study and put a sponsor's hold on it. She withdrew her support because the amendment removed from the legislation reasonable and necessary safeguards against theft and unsafe salvaged airbags that were in the original legislation.

Accordingly, the order of the Appellate Division should be modified, with costs to the defendants, by declaring valid chapter 161 of the Laws of 1996 and, as so modified, affirmed.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO and READ concur.

Order modified, with costs to defendants, by declaring valid chapter 161 of the Laws of 1996 and, as so modified, affirmed.